<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **NYISHA LASSITER COVINGTON, as Administratrix of the Estate of JERMAINE COVINGTON, NYISHA LASSITER COVINGTON, individually, and NIJEE COVINGTON, a minor by his guardian NYISHA LASSITER COVINGTON,** | Case No. 2:20-cv-07461 (BRM) (ESK) |
| Plaintiffs, | **OPINION** |
| v. | |
| **TOWNSHIP OF HILLSIDE, et al,** | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss (ECF No. 7) filed by Union County Sheriff's Department Defendants Undersheriff Dennis Burke ("Burke"), Undersheriff Amilar Colon ("Colon"), Sheriff Peter Corvelli ("Corvelli") (collectively, the "Supervising Defendants"), Sheriff Officer O'Grady ("O'Grady"), Sheriff Officer Yasinski ("Yasinski") (together, the "Individual Sheriff Officers"), Union County Sheriff's Department ("UCSD"),[1] and Union County (collectively, "Moving Defendants")[2] seeking to dismiss the Complaint (ECF No. 1) filed by Plaintiffs, Nyisha Lassiter Covington ("Nyisha"), individually and as administratrix of the estate of Jermaine Covington ("Decedent"), and N.C., her son (together, "Plaintiffs") pursuant to Federal

---

[1] The Complaint refers to the Union County Sheriff's Department as also the "Union County Sheriff's Office." (ECF No. 1 at 9.)

[2] For the sake of clarity, both the Supervising Defendants and the Individual Sheriff Officers are UCSD officers.

Rule of Civil Procedure 12(b)(6). Plaintiffs filed an Opposition to Moving Defendants' Motion (ECF No. 20), and Moving Defendants did not file a Reply. Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein and for good cause shown, Moving Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED in part and DENIED in part**.

I.   **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This case arises out of the tragic suicide by Decedent, while detained at Hillside Police Department during the "booking process."[3] (ECF No. 1 ¶ 34.) On the date of the subject incident, June 22, 2018, Decedent was driving with Nyisha in a black 2006 BMW (the "BMW") on Route 22 in Union, New Jersey. (*Id.* ¶ 54.) Union Township Police received a call for a hit and run incident involving a vehicle that matched the description of Decedent's car. (*Id.* ¶ 55.)[4] A Union Township officer engaged in pursuit of Decedent but eventually terminated pursuit when the

_____

[3] Nyisha and Decedent were married on September 29, 2004 and have one son together, N.C. (ECF No. 1 ¶ 48.) Decedent suffered from bipolar disorder and schizophrenia and had a history of addiction. (*Id.* ¶ 49.) Decedent had a criminal record and had been incarcerated before. (*Id.* ¶ 50.) The Complaint does not allege whether Moving Defendants were aware of Decedent's history of mental health issues or addiction.

[4] Union Township Police are not defendants to this action. (*See* ECF No. 20 at 15.)

officer lost Decedent. (*Id.* ¶ 56.) Thereafter, Decedent crashed the BMW into a fence and/or telephone pole while driving eastbound on Route 22. (*Id.* ¶ 57.) Also on June 22, 2018, officers from Hillside Police Department, Captain Nicola Lomonte, Officer Joseph Vetter ("Vetter"), and Officer Kristi Janusz ("Janusz") responded to two reports of car jackings on Route 22 which were both traced to Decedent. (*Id.* ¶¶ 58–60.)[5] After the attempted car jackings, Decedent tried to flee the scene on foot into a wooded area. (*Id.* ¶ 61.) Vetter and Janusz, as well as the Individual Sheriff Officers, commenced a foot patrol. (*Id.* ¶ 62.)[6] Vetter and Janusz located Decedent as he was attempting to break into a home in Hillside, New Jersey. (*Id.* ¶ 67.) According to sworn testimony from Vetter, Decedent motioned to his waistband as though he had a gun and "kept yelling . . . you should fuckin' kill me, kill me now . . . I have a gun on me, I'll shoot you." (*Id.* ¶ 69.) At this time, Vetter "un-holstered" his weapon, put it in the "fire" position but did not discharge it. (*Id.* ¶ 70.) At approximately 3:45 p.m., Hillside Police Officers "tackled" Decedent to the ground and placed him in handcuffs. (*Id.* ¶ 72.) During the arrest and apprehension of Decedent, Hillside Police Officers and the Individual Sheriff Officers were on the scene. (*Id.* ¶ 73.) Both Hillside Police Officers and the Individual Sheriff Officers heard the yelling and screaming of Decedent who "express[ed] severe psychological stress and was suicidal." (*Id.* ¶ 74.) Specifically, at the time of apprehension and prior to his transport to the Hillside Police Department, Decedent yelled things like:

- "You're a pussy, you should have shot me, you should have killed me." (*Id.* ¶ 75.)

- "Fuck you, I'm not going in today, you should have killed me." (*Id.* ¶ 77.)

---

[5] Decedent was identified by third parties as well as Union Township Police who found Decedent's wallet in the crashed BMW. (*Id.* ¶ 60.)

[6] The Individual Sheriff Officers also helped establish a perimeter to assist with the search. (*Id.* ¶ 65.)

- " "He shoulda killed me . . . I don't know why they didn't shoot me . . . Why didn't he just shoot me?" (*Id.* ¶ 79.)

- "[W]hy didn't you guys just kill me, why didn't you guys just kill me . . . ." (*Id.* ¶ 80.)

- "Just shoot, just kill me now." (*Id.* ¶ 83.)

- Decedent also asked Janusz "how much it would take to kill him." (*Id.* ¶ 84.)

Vetter, "[i]nstead of recognizing mental health issues, suicidal ideation," and the need for immediate medical treatment and crisis intervention, perceived many of Decedent's statements as an attempt to "egg" him on. (*Id.* ¶ 85.)[7] Vetter believed Decedent was attempting to create a "suicide by cop" situation. (*Id.*)

At some point after Decedent's apprehension, Decedent was placed in "Radio Car 602,"[8] where he stated again he wanted to die. (*Id.* ¶ 86.) A total of "34 minutes elapsed between the time [Decedent] was placed in handcuffs . . . and the 'Radio Car' left the scene for the Police Stat[ion]." (*Id.* ¶ 89.) While in transport and with Decedent in handcuffs, "Vetter repeatedly struck [Decedent] in the face and head, causing injury." (*Id.* ¶ 94.)

At the Hillside police station, Decedent was seated on a long, backless bench and his right wrist was handcuffed to a horizonal bar on the bench. (*Id.* ¶ 99.) While waiting to be processed for booking, Decedent "appeared to be trying to goad someone to walk up to him." (*Id.* ¶ 100.) Thereafter, following an incident in which Decedent threw a paper cup of water on the floor, and

---

[7] Vetter also testified he believed Decedent looked like "a person in total despair." (*Id.* ¶ 82.)

[8] While not explicit, the Complaint suggests Radio Car 602 is a Hillside Police Department vehicle. (*See* ECF No. 1 at 21.)

Vetter walked toward Decedent and knelt close to him to pick up the paper cup, Decedent grabbed

hold of Vetter's unsecured gun and shot himself in the head. (*Id.* ¶ 127.)

On June 18, 2020, Plaintiffs filed this action against Moving Defendants alleging § 1983

municipal liability under *Monell* against Union County and/or the UCSD (Count II), individual

and supervisory liability against the Supervisory Defendants and the Individual Sheriff Officers

(Count III), New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 ("NJCRA") against all Moving

Defendants (Count V), negligence against all Moving Defendants (VI) wrongful death against all

Moving Defendants (Count VII), and negligent and intentional infliction of emotional distress

against all Moving Defendants (Count IX). On August 24, 2020, Moving Defendants filed a

Motion to Dismiss. (ECF No. 7.) On October 14, 2020, Plaintiffs filed an opposition brief.

(ECF No. 20.) Defendants did not file a reply.

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

district court is "required to accept as true all factual allegations in the complaint and draw all

inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at

228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the

factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec.*

6

*Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

Importantly, here, a civil rights complaint must "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir. 1988) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981)). A court must look past any conclusory allegations regarding the willfulness of the defendants' conduct or the defendants' reckless disregard of the rights of the victim; the court will instead focus on "the factual scenario itself to examine whether the conduct alleged, viewed most favorably to plaintiffs, is reasonably susceptible to falling within the conclusions alleged." *Freedman*, 853 F.2d at 1115.

In situations in which more specific allegations may demonstrate that the conduct at issue falls within § 1983's ambit, district courts are required to permit amendment to the complaint. *Id.* at 1114. "Furthermore, when the lack of factual specificity is fairly attributable to defendants' control of required information, we have permitted the action to proceed to a reasonable amount of discovery to help [plaintiff] make the necessary showing to prove her case." *Id.* (internal quotation marks and citation omitted). *Mullin v. Balicki*, Civ. A. No. 11-247, 2013 WL 5935998, at *4 (D.N.J. Nov. 1, 2013), *aff'd*, 875 F.3d 140 (3d Cir. 2017), and *aff'd*, 875 F.3d 140 (3d Cir. 2017). Indeed, this Court is mindful of the fact that the "need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (citing *Colburn v. Upper Darby Township (Colburn I)*, 838 F.2d 663, 667 (3d Cir. 1988)); *Estate of Allen v. Cumberland Cty.*, Civ. A. No. 15-6273, 2018 WL 1293154, at *12 (D.N.J. Mar. 13, 2018).

## III.   DECISION

### A.   Section 1983 Claims

Plaintiffs' core claims arise under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish § 1983 liability, a plaintiff must prove a deprivation of a "right secured by the Constitution and the laws of the United States by a person acting under color of state law." *Kneipp*, 95 F.3d at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Moving Defendants do not dispute their status as state actors for purposes of § 1983. Therefore, the sole inquiry here is whether Moving Defendants engaged in conduct that deprived Decedent of a right or privilege secured by the Constitution or the laws of the United States. *See Colburn I*, 838 F.2d at 667.[9]

### 1.   *Monell* Liability against Union County and/or the UCSD (Count II)

Moving Defendants argue Plaintiffs fail to state a claim for relief against Union County and/or the UCSD because Plaintiffs have "fail[ed] to allege that there exists municipal liability

---

[9] When a plaintiff seeks to hold a prison official liable for failing to prevent a pre-trial detainee's suicide, a pre-trial detainee may bring a claim under the Due Process Clause of the Fourteenth Amendment that is essentially equivalent to the claim that a prisoner may bring under the Eighth Amendment. Therefore, whether a pre-trial detainee or a convicted prisoner, a plaintiff must show: (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability. *Estate of Allen*, 2018 WL 1293154, at *7 (citing *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017)).

under §1983 because Plaintiff[s] fail[] to recite any existing UCSO policy, let alone a UCSO policy in regards to screening an apprehended arrestee for emotional disturbance." (ECF No. 8 at 7.) Plaintiffs argue, among other things, Union County and/or the UCSD "failed to enact or enforce [their own] policies or protocols for providing medical care to emotionally disturbed and suicidal persons." (ECF No. 20 at 32.) Further, "defendants did in fact hear the screaming and suicidal threats by the plaintiff which in fact should have led them to attempt medical intervention with the assistance of or in conjunction with the Hillside police." (*Id.* at 34.)

It is well-settled that a municipality may be held liable under § 1983 only if its official policy or custom causes a constitutional injury. *Monell v. New York Department of Social Services*, 463 U.S. 658, 694 (1978). A governmental entity may not be held liable under § 1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*. *Id.* at 690; *see also McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (explaining that in *Monell* "the Supreme Court established that a municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*"); *see also Carver v. Foerster*, 102 F.3d 96, 102–05 (3d Cir. 1996) (holding that a county is a local government unit under *Monell*). Rather, in order for a governmental entity to be liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997). Therefore, a complaint will be dismissed for failing to state a plausible claim under *Monell* if the plaintiff fails to specify the relevant policy or custom and simply paraphrases the elements of a *Monell* claim. *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014); *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009).

Although complaints alleging municipal liability under § 1983 are not subject to heightened pleading standards, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, et al.*, 507 U.S. 163, 168 (1993), a plaintiff alleging municipal liability "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658. A plaintiff must also allege a "direct causal link between a [local government] policy or custom and the alleged constitutional deprivation." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *see also Mazariegos v. Monmouth Cty. Corr. Inst.*, Civ. A. No. 12-5626, 2014 WL 1266659, at *8 (D.N.J. Mar. 25, 2014).

Further, if the policy at issue "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222–24 (3d Cir. 2014) (citation and internal quotation marks omitted) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (citing *Bryan Cnty*, 520 U.S. at 410). Although "[o]rdinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train,'" liability may be based on a single incident if the need for training is sufficiently obvious. *Id.* at 223 (citing *Connick v. Thompson*, 563 U.S. 51, 64 (2011) (reaffirming that in "rare" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a preexisting pattern of violations")). The Third Circuit has applied this "single-incident liability" theory to failure to train claims, but has recognized that it also applies "to other claims of [municipal] liability through inaction." *Berg v.*

*Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The Third Circuit has developed a three-part test for determining whether a failure to train or to implement a policy amounts to deliberate indifference, requiring that: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 356 (3d Cir. 2008); *see also Thomas*, 749 F.3d 217 at 224–25 ("Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'") (citing *Bryan Cnty.*, 520 U.S. at 409).

Broadly, Plaintiffs' theories of liability under *Monell* appear to be based on failures to train/supervise as to policies and procedures for the handling of emotionally disturbed persons. (*See* ECF No. 1 at 47–49.) Moving Defendants' brief falls short of analyzing the specific allegations in the Complaint that form the basis for the *Monell* claims, choosing instead to describe the Complaint as "consist[ing] merely of conclusory statements." (ECF No. 8 at 7.) In their opposition brief, Plaintiffs contend they have sufficiently alleged that:

> Sheriff Corvelli and Undersheriffs Colon and Burke failed to enact or enforce policies or protocols for providing medical care to emotionally disturbed and suicidal persons. The failure to enact or enforce any such policies was so obviously deficient that these defendants knew with substantial certainty that serious injury or death would result by the failure to do so. . . . Further that [these defendants] failed to train their subordinates in the handling of emotionally disturbed persons, such lack of training and policy a direct and proximate cause of Covington' s suicide [Complaint, 1183]. In the alternative, plaintiff pled that Union County and the UCSO each had policies requiring that emotionally disturbed persons, especially those with a particular vulnerability to suicide, not be transported to a County Jail but instead b[e] brought to a medical facility for observation and treatment . . . .

(ECF No. 20 at 32–33.)

The Court concludes Plaintiffs' Complaint sufficiently states a *Monell* claim against Union County and/or the UCSD based on failure to train/supervise. The Complaint identifies the Supervisory Defendants as policymakers and supervisors and alleges that their failure to enact or enforce such policies and their failure to train their subordinates, was the direct and proximate cause of Decedent's suicide.

Accordingly, Moving Defendants' Motion to Dismiss the *Monell* claims against Union County and/or the UCSD is **DENIED**.[10]

### 2.    Supervisory Liability (Count III)

Moving Defendants do not specifically challenge Plaintiffs' supervisory liability claims against the Supervisory Defendants. Instead Moving Defendants broadly maintain "it cannot be said that there exists a policy which deprives Plaintiff of a constitutionally granted right. Plaintiff does not recite verbatim any [UCSD] policy concerning supposed mentally ill individuals who may require screening. Plaintiff does not connect the suicide of [Decedent] to [UCSD's]" acts or omissions and further cannot demonstrate Decedent's stealing of a Hillside Police Officer's gun and committing suicide would have been foreseeable to Moving Defendants. (ECF No. 8 at 11.) Plaintiffs contend the Complaint:

> [P]leads the policy theory of liability against Corvelli, Colon and Burke: that they are responsible for the failure to train and supervise in the area of medical attention and the handling of emotionally disturbed suicidal detainees. These actions were the "moving force" behind the harm. *Board of County Comm'rs of Bryon County v. Brown*, 520 U.S. 397, 404 (1997); *Grazier v. City of Philadelphia*,

---

[10] While Moving Defendants do not assert qualified immunity, the Court, regardless, finds it unwise to engage in a qualified immunity analysis at this time. *See Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.").

> 328 F.3d 120, 125 (3d Cir. 2003); *Sample*, 885 F.2d at 1118. The failures of O'Grady and Yasinski in offering assistance was so obvious as to bespeak the lack of training.

(ECF No. 20 at 36–37.)

Personal involvement by a defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Therefore, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Murphy v. Middlesex Cty.*, 361 F. Supp. 3d 376, 387 (D.N.J. 2019) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

The Third Circuit in *Barkes v. First Correctional Medical, Inc.*, reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev. on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015) (citing

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *Barkes*, 766 F.3d at 316. A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (internal quotation marks and citations omitted).

Deliberate indifference in the supervisory context may be demonstrated by

> (i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's[] (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001) (citing *Sample*, 885 F.2d at 1099).

Here, the Court finds Plaintiffs do state a plausible custom or policy claim against the Supervisory Defendants arising from the inactions of the Individual Sheriff Officers. Moving Defendants' primary challenge that Plaintiffs have identify a municipal policy, practice, or custom to support Plaintiffs' *Monell* claim, is refuted by the Complaint which alleges:

> Union County and the UCS[D] each had policies requiring that emotionally disturbed persons, especially those with a particular vulnerability to suicide, not be transported to a County Jail but instead be brought to a medical facility for observation and treatment and prior to same to be put on close or constant watch.

(ECF No. 1 ¶ 159.)

Indeed, Plaintiffs allege the Supervisory Defendants "failed repeatedly to provide sheriff officers with training on handling emotionally disturbed persons," (*id.* ¶ 240) and the Supervisory Defendants' failure to protect Decedent from the actions of the Individual Sheriff Officers amounted to "a policy of deliberate indifference" to Decedent's substantive due process rights. (*Id.* ¶ 245.) Whether these allegations are true is not for the Court to decide; that will be borne out in discovery. At this Rule 12(b)(6) stage, however, Plaintiffs have sufficiently stated a claim for an unconstitutional policy or custom against the Supervisory Defendants arising from alleged deliberate indifference to Decedent's known risk of suicide during his detention. *McCracken v. Fulton Cty.*, Civ. A. No. 3:19-1063, 2020 WL 2767577, at *9 (M.D. Pa. May 28, 2020).

Accordingly, Moving Defendants' Motion to Dismiss the Supervisory Liability claim is **DENIED**.

### 3.    Individual Liability (Count III)

Moving Defendants argue Plaintiffs' individual liability claim against the Individual Sheriff Officers fails for three main reasons. First, Plaintiffs fail to allege the Individual Sheriff Officers either detained or arrested Decedent, or relatedly, that they should have commandeered Decedent from custody of the Hillside Police Officers. (ECF No. 8 at 8.) Second, Plaintiffs fail to allege there exist any UCSD policy regarding "screening an apprehended arrestee for emotional disturbance." (*Id.* at 7.) Third, Plaintiffs cannot demonstrate a causal nexus between the suicide of Decedent to any action or inaction by the Individual Sheriff Officers. (*Id.* at 8.) Plaintiffs oppose

arguing the Individual Sheriff Officers heard Decedent's "suicidal threats . . . which in fact should have led them to attempt medical intervention with the assistance of or in conjunction with the Hillside police." (ECF No. 20 at 33.) Next, Plaintiffs have alleged Moving Defendants "had policies requiring that emotionally disturbed persons, especially those with a particular vulnerability to suicide, not be transported to a County Jail," but rather be "brought to a medical facility for observation and treatment . . . ." (*Id.* at 32–33.) Finally, Plaintiffs argue it was reasonably foreseeable that "failure to intervene to advise the Hillside Defendants that [Decedent] was a suicide risk and needed to be taken to the hospital," resulted in Decedent's eventual suicide. (*Id.* at 42.)

A police officer is directly liable under § 1983 if he fails to intervene when a constitutional deprivation takes place in his presence. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)). However, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651; *Shine v. Montgomery Cty., PA*, Civ. A. No. 15-2354, 2017 WL 11517652, at *8 (E.D. Pa. Sept. 26, 2017).

Here, the Complaint alleges the Individual Sheriff Officers "failed to intervene by advising [Hillside Police Officers] at the scene of the apprehension and arrest that [Decedent] be transported to a medical facility despite knowing or should having known that [Decedent] was suicidal and required medical management; and that he required at all times close or constant observation." (ECF No. 1 ¶ 175.) According to the Complaint, the Individual Sheriff Officers' failure to intervene despite "evidence of suicidal ideation and severe emotional distress, evidenced a reckless, deliberate and shocking disregard for the substantial likelihood that [Decedent] would attempt to or would commit suicide." (*Id.* ¶ 207.)

16

The Court will not delve into when specifically (or if) Moving Defendants' custodial relationship was terminated by Hillside Police Department's presence at the time of apprehension, arrest of Decedent, transport of Decedent to Hillside Police Department, and Decedent's subsequent suicide. *Brown v. Mount Laurel Twp.*, Civ. A. No. 13-6455, 2016 WL 5334657, at *8 (D.N.J. Sept. 21, 2016) ("Personal involvement here is sufficiently plead through the allegations that each officer contributed to the situation. Discovery will shape the actions, or inactions, of each officer."). As pled, the Complaint is sufficiently particular to each officer's involvement. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Setting aside this issue at this juncture, the Court is now faced with the question of whether the facts surrounding Decedent's suicide, as alleged in Plaintiffs' Complaint, give rise to a viable claim under § 1983. The Court finds Plaintiffs have alleged sufficient facts that the Individual Sheriff Officers were present during the alleged apprehension and arrest of Decedent and failed to intervene despite a reasonable opportunity to do so.

Accordingly, Moving Defendants' Motion to Dismiss as to Individual Liability claim is **DENIED**.

### B.    State Law Claims

Plaintiffs allege a host of state law claims against Moving Defendants. The Court will address each claim in turn.

### 1.    NJCRA (Count V)

Moving Defendants spend little time addressing Plaintiffs' NJCRA in their moving brief. (*See* ECF No. 8.) Plaintiffs argue the Complaint pleads a viable NJCRA claim. (ECF No. 20 at 37.)

The NJCRA was modeled after § 1983, and, therefore, courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *Chapman v. New Jersey*, Civ. A. No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart."); *Armstrong v. Sherman*, Civ. A. No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."). Accordingly, Plaintiffs are correct to note, the same analysis used for the § 1983 claims applies to the NJCRA claims. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (noting that "it appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983]"). Because the Court has declined to dismiss Plaintiffs' § 1983 claims against Moving Defendants at this time, the same conclusion applies to Plaintiffs' NJCRA cause of action. *Mullin*, 2019 WL 2315044, at *8.

Accordingly, Moving Defendants' Motion to Dismiss the NJCRA claim is **DENIED**.

### 2.   Negligence (Count VI)

Moving Defendants argue Plaintiffs' negligence claim must be dismissed because Moving Defendant did not owe a duty of care to Decedent. (ECF No. 8 at 9.) Plaintiffs argue the Supervisory Defendants and the Individual Sheriff Officers owed a duty of care to Decedent to which no immunity applies. (*See* ECF No. 20 at 38–42.) Specifically, Plaintiffs argue both the Supervisory Defendants and the Individual Sheriff Officers were negligent in their actions or inactions that led to Decedent's suicide. (*See id.* at 45–46.)

"'[T]o sustain a common law cause of action in negligence' under New Jersey law, 'a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Aymonier v. U.S.*, 432 F. App'x 66, 67 (3d Cir. 2011) (quoting *Polzo v. Cnty of Essex*, 196 N.J. 569, 584 (2008)).

Here, Plaintiffs have alleged that the Individual Sheriff Officers had a duty, pursuant to UCSD policy, to provide medical attention to an emotionally disturbed person, the Decedent, a known suicide risk; they breached this duty by failing to provide Decedent with adequate medical attention/care; and that failure resulted in him committing suicide. These allegations are sufficient at this stage to state a claim for negligence. Further, it is plausible, at the motion to dismiss stage, that the Supervisory Defendants had a duty to ensure that proper training occurred but failed to do so, which resulted in Decedent's suicide. As such, Plaintiffs have sufficiently stated a claim for negligence against both the Individual Sheriff Officers and the Supervisory Defendants. *See Mullin*, 2019 WL 2315044, at *11.

Accordingly, Moving Defendants' Motion to Dismiss the negligence claim is **DENIED**.

### 3.      Wrongful Death (Count VII)

Moving Defendants do not specifically address the wrongful death claim. Plaintiffs argue the Complaint has set forth a viable claim for wrongful death. (ECF No. 20 at 46.)

"Plaintiffs generally may not vindicate the rights of others" *Endl v. New Jersey*, 5 F. Supp. 3d 689, 696 (D.N.J. 2014). "Under New Jersey law, an executor or administrator may pursue an action based on 'the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he lived.'" *Id.* (quoting N.J. Stat. Ann. § 2A:15-3). "Claims of [] wrongful death are derivative and therefore must be dismissed when the underlying claims have been dismissed." *White v. City of Vineland*, Civ. A. No. 16-8308, 2018

WL 4583509, at *8 (D.N.J. Sept. 24, 2018) (internal quotation marks omitted) (quoting *Abramson v. Ritz-Carlton Hotel Co. & Spa Resort*, Civ. A. No. 09-3264. 2011 WL 2149454, at *5 (D.N.J. May 31, 2011), *aff'd*, 480 F. App'x 158 (3d Cir. 2012)). Wrongful death claims may be derivative of claims under § 1983 or the NJCRA. *See Estate of Rosario v. Paterson Police Dep't*, Civ. A. No. 14-5167, 2016 WL 6540447, at *3 (D.N.J. Nov. 3, 2016) (permitting derivative wrongful death claims where § 1983 claims were not dismissed); *Hottenstein v. City of Sea Isle City*, Civ. A. No. 11-740, 2011 WL 2559523, at *5 n.5 (D.N.J. June 27, 2011) (dismissing wrongful death claims where NJCRA claims were dismissed). Because Plaintiffs' § 1983 and NJCRA claims remain, and because Moving Defendants did not address this cause of action, the wrongful death claim also survives. *Seidle v. Neptune Twp.*, Civ. A. No. 174428, 2020 WL 4349901, at *3 (D.N.J. July 29, 2020) (noting that "wrongful death claims shall be dismissed where the underlying claims are dismissed, but may survive where the underlying claims survive").

Accordingly, Moving Defendants' Motion to Dismiss the wrongful death claim is **DENIED**.

### 4.      Emotional Distress (Count IX)

Moving Defendants do not specifically address Plaintiffs' emotional distress claims. Plaintiffs argue the Complaint has stated a viable claim for both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). (ECF No. 20 at 46.)

To state a claim for IIED, a plaintiff must plead facts showing "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998) (citation omitted). To recover for NIED, a plaintiff must allege: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death

or injury at the scene of the accident; and (4) resulting severe emotional distress." *Est. of del Rosario*, 2015 WL 1759473, at *5; *Hunter v. Dematic USA*, Civ. A. No. 16-00872, 2016 WL 3410165, at *7 n.4 (D.N.J. June 15, 2016).

Here, Plaintiffs' Complaint fails to raise a plausible right to relief as to IIED because it completely lacks any alleged facts that Moving Defendants intended to cause Plaintiffs' emotional distress, and that their conduct was extreme and outrageous. For that reason alone, Plaintiffs' intentional infliction of emotional distress claim fails. *See, e.g.*, *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988) ("For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress."). The Court also dismisses Plaintiffs' NIED claim because the Complaint does not plausibly allege all the necessary elements for an NIED claim, namely, whether Plaintiffs were in or around the vicinity when Decedent committed suicide. *Est. of del Rosario*, 2015 WL 1759473, at *3 (providing that where certain plaintiffs "were not present at the time of the shooting or its immediate aftermath . . . their individual NIED claims fail as a matter law"); *Jenson v. St. Louis*, Civ. A. No. 19-515, 2019 WL 3765426, at *3 (M.D. Pa. Aug. 9, 2019) (finding that where plaintiff did not witness or "perceive" the accident, the NIED claim would be dismissed).

Accordingly, Moving Defendants' Motion to Dismiss the emotional distress claims is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. The Motion is **DENIED** with respect to Plaintiffs' § 1983 claims (Counts II and III), NJCRA claim (Count V), negligence claim (Count VI), and wrongful death

21

claim (Count VII), and **GRANTED** with respect to Plaintiffs' emotional distress claims (Count IX).[11] An appropriate order follows.[12]


Date: March 29, 2021                                    */s/ Brian R. Martinotti*
                                                        HON. BRIAN R. MARTINOTTI
                                                        UNITED STATES DISTRICT JUDGE

---

[11] The Court notes the intentional and negligent infliction of emotional distress claims are both part of Count IX. (*See* ECF No. 1 at 81–82.)

[12] The Court notes that to the extent Plaintiffs seek to sue any of the Moving Defendants in their "official" capacity, those claims are denied. Indeed, although "state officials literally are persons," they are not "persons under § 1983" and cannot be sued under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see, e.g.*, *Bayete v. Ricci*, 489 F. App'x 540, 542 (3d Cir.2012) ("The Eleventh Amendment bars federal suits for damages against state officers in their official capacities. Moreover, state officers sued in their official capacities for money damages are not 'persons' within the meaning of Section 1983."). *See Gaymon v. Esposito*, Civ. A. No. 11-4170, 2013 WL 4446973, at *7 (D.N.J. Aug. 16, 2013).