<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NYISHA LASSITER COVINGTON, as Administratrix of the Estate of JERMAINE COVINGTON, NYISHA LASSITER COVINGTON, individually, and NIJEE COVINGTON, a minor by his guardian NYISHA LASSITER COVINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF HILLSIDE, et al,<br><br>Defendants. | Case No. 2:20-cv-07461 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Township of Hillside, Lieutenant Qiana Brown, Officer Antoine Brown ("Officer A. Brown"), Detective Wilson, Detective Young, Officer Carlos Grassa, Officer Ana Iscoa-Palacios, Officer Krysti Janusz ("Officer Janusz"), Captain Nicola Lomonte ("Captain Lomonte"), Officer Natalie Ogonowski, Police Chief Vincent Ricciardi ("Chief Ricciardi"), Officer Joseph Vetter ("Officer Vetter"), and Sergeant Daniel Wanat's ("Sergeant Wanat") (collectively, "Hillside Defendants") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 36.) Plaintiffs Nyisha Lassiter Covington ("Nyisha"), individually and as administratrix of the Estate of Jermaine Covington ("Decedent"), and Nijee Covington (or "N.C."), a minor by his guardian (together, "Plaintiffs") oppose the Motion. (ECF No. 27) Having reviewed the submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Hillside Defendants' Motion for Judgment on

the Pleadings is **GRANTED in part and DENIED in part**.

I.   BACKGROUND

For the purposes of this Motion for Judgment on the Pleadings, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). "The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." *Newton v. Greenwich Twp.*, Civ. A. No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).

The factual background of this litigation is largely summarized in the Court's March 29, 2021 Opinion. (*See* ECF No. 25.)[1] Therefore, the Court will only include factual background relevant to deciding this Motion.

This case arises out of the tragic suicide by Decedent, while detained at the Hillside Police Station during the "booking process." (ECF No. 1 ¶ 34.) On June 22, 2018, Decedent was driving with Nyisha in a black 2006 BMW (the "BMW") on Route 22 in Union, New Jersey. (*Id.* ¶ 54.)[2] Union Township Police received a call for a hit and run incident involving a vehicle that matched

---

[1] There, the Court ordered the moving defendants' motion to dismiss was granted in part and denied in part. Specifically, the Court denied the motion as to *Monell* liability against Union County and the Union County Sheriff's Department, supervisory and individual liability, NJCRA, negligence, and wrongful death, and granted the motion as to both intentional infliction of emotional distress and negligent infliction of emotional distress. (*See* ECF No. 26 at 2.)

[2] On June 22, 2018, Officers Vetter and Janusz were riding together in a marked Unit 602 police vehicle between the hours of 7:00 a.m. and 5:45 p.m. (*Id.* ¶ 53.)

the description of Decedent's car. (*Id.* ¶ 55.) A Union Township officer engaged in pursuit of Decedent but eventually terminated pursuit when the officer lost Decedent. (*Id.* ¶ 56.) Thereafter, on June 22, 2018, Decedent crashed the BMW into a fence and/or telephone pole while driving eastbound on Route 22. (*Id.* ¶ 57.) Captain Lomonte and Officers Vetter and Janusz responded to two reports of car jackings on Route 22 which were both traced to Decedent. (*Id.* ¶¶ 58–60.)[3] After the attempted car jackings, Decedent tried to flee the scene on foot into a wooded area. (*Id.* ¶ 61.) Officers Vetter and Janusz commenced a foot patrol. (*Id.* ¶ 62.)

According to a Computer Aided Dispatch report ("CAD Report"), Officers Vetter and Janusz located Decedent as he was attempting to break into a house located at 612 Leo Street in Hillside, New Jersey. (*Id.* ¶ 67.) According to the CAD Report, Decedent motioned to his waistband as though he had a gun and "kept yelling . . . you should fuckin' kill me, kill me now . . . I have a gun on me, I'll shoot you." (*Id.* ¶ 69.) At this time, Officer Vetter "un-holstered" his weapon and put it in the "fire" position but did not discharge it. (*Id.* ¶ 70.) At approximately 3:45 p.m., Officers Vetter and A. Brown "tackled" Decedent to the ground and placed him in handcuffs. (*Id.* ¶ 72.) At some point thereafter, Officer Vetter "re-holstered" his service gun "without returning the safety device to the non-fire position and without securing the gun into the holster with safety button" as "mandated by policy and procedure." (*Id.* ¶ 71.) During the arrest and apprehension of Decedent, Captain Lomonte, Sergeant Wanat, Officers Ogonowski and Grassa, Detectives Young and Wilson, as well as Union County police were on the scene. (*Id.* ¶ 73.) They heard the yelling and screaming of Decedent who "express[ed] severe psychological stress and

---

[3] Decedent was identified by third parties as well as Union Township police who found Decedent's wallet in the crashed BMW. (*Id.* ¶ 60.)

was suicidal." (*Id.* ¶ 74.) Specifically, at the time of apprehension and prior to his transport to the Hillside Police Station, Decedent yelled things like:

- "You're a pussy, you should have shot me, you should have killed me." (*Id.* ¶ 75.)

- "Fuck you, I'm not going in today, you should have killed me." (*Id.* ¶ 77.)

- "He shoulda killed me . . . I don't know why they didn't shoot me . . . Why didn't he just shoot me?" (*Id.* ¶ 79.)

- "[W]hy didn't you guys just kill me, why didn't you guys just kill me . . . ." (*Id.* ¶ 80.)

- "Just shoot, just kill me now." (*Id.* ¶ 83.)

- Decedent also asked Officer Janusz "how much it would take to kill him." (*Id.* ¶ 84.)

Officer Vetter, "[i]nstead of recognizing mental health issues, suicidal ideation," and the need for immediate medical treatment and crisis intervention, perceived many of Decedent's statements as an attempt to "egg" him on. (*Id.* ¶ 85.)[4] Officer Vetter believed Decedent was attempting to create a "suicide by cop" situation. (*Id.*)

At some point after Decedent's apprehension, Decedent was placed in "Radio Car 602,"[5] where, according to Officer Vetter, he stated again he wanted to die. (*Id.* ¶ 86.) A total of "34 minutes elapsed between the time [Decedent] was placed in handcuffs . . . and the 'Radio Car' left the scene for the Police Stat[ion]." (*Id.* ¶ 89.) While in transport and with Decedent in handcuffs, "[Officer] Vetter repeatedly struck [Decedent] in the face and head, causing injury." (*Id.* ¶ 94.)

---

[4] Officer Vetter also testified he believed Decedent looked like "a person in total despair." (*Id.* ¶ 82.)

[5] While not explicit, the Complaint suggests Radio Car 602 is property of the Hillside Police. (*See* ECF No. 1 at 21.)

Officers Vetter and Janusz and Decedent arrived at the Hillside Police Station at approximately 4:20 p.m. (*Id.* ¶ 95.) According to the CAD Report, Officer Vetter "admitted to patting [Decedent] down thoroughly because he determined [Decedent] was 'interested in . . . 'suicide by cop' . . . so he wouldn't have to go to jail." (*Id.* ¶ 97.)

At the Hillside Police Station, Decedent was seated on a long, backless bench and his right wrist was handcuffed to a horizonal bar on the bench. (*Id.* ¶ 99.) According to Captain Lomonte's sworn statement, Decedent "appeared to be trying to goad someone to walk up to him." (*Id.* ¶ 100.) Thereafter, following an incident in which Decedent threw a paper cup of water on the floor, and Officer Vetter walked toward Decedent and knelt close to him to pick up the paper cup, Decedent grabbed hold of Officer Vetter's unsecured gun and shot himself in the head. (*Id.* ¶ 127.)

Plaintiffs allege Chief Ricciardi was, at all relevant times, the Chief of Police of Hillside Police and was responsible for the "supervision, training, hiring, operations, and oversight" of the Hillside Police Station "between January of 2018 through and including the events described in the Complaint." (*Id.* ¶ 4.) Plaintiffs further allege Chief Ricciardi "had failed to promulgate any General Orders requiring Police Officers to secure their service weapons upon entering the Police Station, as mandated by Best Practices within the law enforcement field." (*Id.* ¶ 144.) In essence, according to Plaintiffs, Chief Ricciardi's "actions and inactions" were the "direct and proximate cause of the death" of Decedent. (*Id.* ¶ 176.).

On May 25, 2021, Hillside Defendants filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to the following claims:

(1) Punitive damages claims asserted as to the Township of Hillside;

(2) Punitive damages claims as to Hillside Defendants in their official capacities;

(3) 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 ("NJCRA") as to Chief Ricciardi in his individual capacity;

(4) negligent infliction of emotional distress as to all Hillside Defendants; and

(5) intentional infliction of emotional distress as to all Hillside Defendants.

(ECF No. 36 at 3.) On May 25, 2021, Plaintiffs filed an Opposition to the Motion. (ECF No. 37.) Also, on May 25, 2021, Hillside Defendants filed a Reply. (ECF No. 38.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See id.*

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, Civ. A. No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it

alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014).

### III. DECISION

In the Opposition, Plaintiffs voluntarily consent to (1) dismissal of the punitive damages claims as to the Township of Hillside and all Hillside Defendants in their official capacities only; and (2) the dismissal of the negligent infliction of emotional dismissal claim. (ECF No. 37 at 29–30.) Accordingly, those claims are dismissed with prejudice, *see Lapella v. City of Atl. City*, Civ. A. No. 10-2454, 2012 WL 2952411, at *5 (D.N.J. July 18, 2012), and the Court addresses the § 1983 and NJCRA claims against Chief Ricciardi in his individual capacity and the intentional infliction of emotional distress claims against Hillside Defendants only.

#### A. Chief Ricciardi[6]

Hillside Defendants contend Plaintiffs failed to state a claim against Chief Ricciardi in his individual capacity. (ECF No. 36-1 at 19–20.) Specifically, Hillside Defendants argue because Plaintiffs' claims against Chief Ricciardi are based "solely upon a theory of respondeat superior, they must be dismissed," because Chief Ricciardi was not "present at the time of the incident," and Plaintiffs' allegations of civil rights violations against Chief Ricciardi are "nothing more than 'conclusory, boilerplate language'" insufficient to withstand a motion to dismiss. (*Id.* at 19.) Plaintiffs oppose, arguing, among other things, "[P]laintiff[s] pled that the facts gave rise to individual supervisory liability under § 1983. The constitutional violations of the failure to train and supervise by Chief Ricciardi was a proximate cause of the death of [Decedent]." (ECF No. 37 at 15.)

---

[6] Plaintiffs have agreed to the dismissal of their claims against the individual defendants, including Chief Ricciardi, in their official capacities under § 1983 and the NJCRA. (*See* ECF No. 37 at 9–10.)

7

### i. Section 1983

Plaintiffs seek relief under § 1983 against Chief Ricciardi in his individual capacity. (*See* ECF No. 1 §§ 256–70.) The Court agrees with Hillside Defendants that Plaintiffs' Complaint is insufficient to state a civil rights action against Chief Ricciardi.

"To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Gillette v. Prosper*, 852 F. App'x 642, 645 (3d Cir. 2021) (citing *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). Here, the Complaint contains only general and conclusory statements that Chief Ricciardi was aware of, but deliberately indifferent to, Decedent's needs and risks of harm. Indeed, here, there are no allegations of specific conduct, knowledge of Decedent's individual circumstances, or other personal involvement in an unlawful deprivation of Decedent's rights. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that a civil rights complaint must allege facts identifying the "conduct, time, place, and persons responsible"). In general, there are two theories of supervisory liability that are applicable to the facts alleged here: (1) Chief Ricciardi's role in establishing, with deliberate indifference to the consequences, a policy, practice, or custom which directly caused the constitutional harm; or (2) Chief Ricciardi's actual participation in the conduct giving rise to the alleged constitutional violation. *Gaymon v. Esposito*, Civ. A. No. 11-4170, 2013 WL 4446973, at *8 (D.N.J. Aug. 16, 2013). Here, Plaintiffs do not allege Chief Ricciardi's actual participation. Therefore, only the first theory of supervisory liability is applicable.

"Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K.*

*v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Plaintiffs do not allege Chief Ricciardi actually adopted a facially unconstitutional policy or practice. For example, Plaintiffs do not allege Chief Ricciardi routinely ordered officers to not secure service weapons when processing detainees or prisoners or ensure emotionally disturbed persons do not receive medical attention. The Complaint does not allege, with sufficient factual support, that Chief Ricciardi *personally* maintained a policy or practice of reckless indifference to instances of handling emotionally disturbed persons or securing service weapons. Plaintiffs allege only that Chief Ricciardi was responsible for the

> development, promulgation, and implementation of policies, procedures, and standards for the department and more specifically General Orders, policies, procedures and standards relating to the handing of emotionally disturbed persons, ensuring that emotionally disturbed persons receive immediate medical care, handling and storage of firearms within the Hillside Police Station, and use of force, acting under color of law and within the scope of his employment.

(ECF No. 1 ¶ 4.) Beyond this, Plaintiffs do not advance any specific allegations against Chief Ricciardi. Plaintiffs fail to allege sufficient facts showing that any particular policy, procedure, or practice implemented by Chief Ricciardi—through his own, individual actions—directly caused the constitutional harm at issue. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, Plaintiffs have failed to state a plausible claim of supervisory liability for failure to train premised on this theory. Therefore, Hillside Defendants' Motion for Judgment on

the Pleadings with respect to the § 1983 claim against Chief Ricciardi in his individual capacity is **GRANTED**.

      ii.    **NJCRA**

Hillside Defendants' Motion for Judgment on the Pleadings as to claims against Chief Ricciardi under the NJCRA is granted for the same reasons discussed above under § 1983. *See Dare v. Twp. of Hamilton*, Civ. A. No. 13-1636, 2013 WL 6080440, at *8 (D.N.J. Nov. 18, 2013).

A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion or force." *Morris v. DeMarco*, Civ. A. No. 1380-17T1, 2019 WL 2635662, at *5 (N.J. Super. Ct. App. Div. June 27, 2019) (citation omitted). The NJCRA was modeled after § 1983, and therefore courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 444 (D.N.J. 2011); *Mullin v. Balicki*, Civ. A. No. 11-247, 2013 WL 5935998, at *4 (D.N.J. Nov. 1, 2013), *aff'd*, 875 F.3d 140 (3d Cir. 2017), and *aff'd*, 875 F.3d 140 (3d Cir. 2017); *Green v. Corzine*, Civ. A. No. 09–1600, 2011 WL 735719, at *7 (D.N.J. Feb. 22, 2011) (recognizing that the NJCRA is the state counterpart of § 1983 for violation of rights secured under New Jersey's Constitution); *see also Armstrong v. Sherman*, Civ. A. No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."); *Chapman v. New Jersey*, Civ. A. No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart.").

As under § 1983, liability under the NJCRA is premised on "personal involvement in the alleged misconduct, and neither allow claims premised solely on respondeat superior." *Baklayan v. Ortiz*, Civ. A. No. 11–03943, 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012) (citing *Didiano v.*

*Balicki*, Civ. A. No. 10–4483, 2011 WL 1466131, at *9 (D.N.J. Apr. 18, 2011)). "In order to state . . . a claim against a supervisor for the actions of his or her subordinates under either § 1983 or the NJCRA, a plaintiff must allege that the supervisor was involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *Gilmore v. Reilly*, Civ. A. No. 09–5956, 2010 WL 1462876, at *6 (D.N.J. Apr. 9, 2010).

Consistent with these principles, Plaintiffs' failure to plead sufficient facts regarding Chief Ricciardi under § 1983 supports judgment on the pleadings as to Plaintiffs' NJCRA claims against Chief Ricciardi as well. *See Green*, 2011 WL 735719, at *7 (providing that because the "[p]laintiff has failed to adequately support his § 1983 claims against Defendants Ricci, Hayman, Sherrer, Paterson, Farrell, and Woodward, we will dismiss the NJCRA claims against these defendants as well because the basis for [p]laintiff's NJCRA claims is the same alleged wrong underlying his § 1983 claims").

Accordingly, Hillside Defendants' Motion for Judgment on the Pleadings as to the NJCRA claim against Chief Ricciardi in his individual capacity is **GRANTED**.

### B. Intentional Infliction of Emotional Distress ("IIED")

Hillside Defendants contend Plaintiffs' claim for IIED should be dismissed because

> [F]or Plaintiffs to properly assert a cause of action for IIED against the Hillside Defendants, Plaintiffs would need to allege that they *intentionally* breached their duties and they also intended to produce emotional distress. Plaintiffs do not articulate any facts that the Hillside Defendants intended to produce emotional distress to the Plaintiffs. This claim was similarly dismissed as to the Union County Defendants based upon the same argument. (ECF Document 25, p. 21). As such, Plaintiffs' claim for IIED cannot survive the requisite pleading standard and should be dismissed.

(ECF No. 36-1 at 23.) Plaintiffs oppose, arguing, *inter alia*, Hillside Defendants knew Decedent "required immediate medical treatment and hospitalization and had a duty to provide that care.

11

They did not. This failure was, in addition to being a proximate cause of the suicide, conduct that meets the intentional and outrageous standard of the intentional emotional distress claim." (ECF No. 37 at 9.)

To plead a *prima facie* claim for IIED under New Jersey law, Plaintiffs must establish that Hillside Defendants intended to cause emotional distress; that the conduct was extreme and outrageous; that the actions proximately caused emotional distress; and that the emotional distress was severe. *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 464 (N.J. Super. Ct. App. Div. 2005). Here, Plaintiffs allege the wrongful conduct at issue was, among other things: (1) Hillside Defendants' failure to transport Decedent to a "medical facility for observation and treatment," (2) Officer Vetter's "use of force on [Decedent] while he was restrained, already in a fragile emotional condition, and helpless to defend himself," and (3) Officer Vetter's "failure to secure his service weapon despite his first-hand knowledge that [Decedent] had a particular vulnerability to suicide." (ECF No. 1 ¶ 462.)

At this stage of the litigation, the Court cannot conclude Officer Vetter's conduct was not intended to cause Decedent's emotional distress and that the conduct was not extreme and outrageous. *See Torres v. Monmouth Cnty. Correctional Inst.*, Civ. A. No. 19-17704, 2021 WL 3773687, at *8 (D.N.J. Aug. 25, 2021). Therefore, the Court will permit the IIED claim to proceed against Officer Vetter based on Officer Vetter's conduct, namely, "[w]hile in transport and with [Decedent] restrained in handcuffs," Officer Vetter "repeatedly struck" Decedent "in the face and head, causing injury." (ECF No. 1 ¶ 94.)[7]

---

[7] To be sure, the Court does not find Hillside Defendants' failure to transport Decedent to a medical facility for observation and treatment sufficient to raise a claim to relief as to IIED because the Complaint lacks any alleged facts that Hillside Defendants intentionally sought to cause Decedent's emotional distress. *See, e.g.*, *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863

Accordingly, Hillside Defendants' Motion for Judgment on the Pleadings with respect to the IIED claim against Officer Vetter is **DENIED**, but the IIED claims are **GRANTED** with respect to the remaining Hillside Defendants.

## IV. CONCLUSION

For the reasons set forth above, Hillside Defendants' Motion is **GRANTED in part and DENIED in part**. An appropriate order follows.

Date: September 20, 2021

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

(N.J. 1988) ("For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress.").